UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                   CASE NO.

      Plaintiff,

vs.

GRAND LUX CAFE LLC, a Foreign Limited Liability
Company D/B/A GRAND LUX CAFE

      Defendant.
_____/

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, GRAND LUX CAFE LLC, a foreign limited liability company d/b/a GRAND LUX CAFE (hereinafter referred to as "GRAND LUX CAFE"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1)      This action is also brought pursuant to 28 C.F.R. Part 36.

2)      This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3)      Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)      Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a grand fried calamari.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)      Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)      Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)      At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby his vision fluctuates from 20/250 to 20/800.

13)      Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)      In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to his visual disability and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

16)     Plaintiff uses the computer regularly, but due to his visual disability, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist him, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)    Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)    Defendant, GRAND LUX CAFE, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

20)    Defendant, GRAND LUX CAFE, is a company that sells salads, pastas, pizza, burgers, sandwiches, steaks, seafood, desserts and beverages. There is a retail location in Miami-Dade County.

21)    At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "GRAND LUX CAFE".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)    Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)    At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.grandluxcafe.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the

requirements of the ADA. The website also services Defendant's physical stores by providing information on its brand and other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)     Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)     Traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-

shop Defendant's products, plan his visits, and to compare products, services, prices, sales, discounts, and promotions are important and necessary accommodations for Plaintiff because Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)      During the month of May 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

28)      Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)      Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

Grand Lux Cafe: https://www.grandluxcafe.com/

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 123.0.6312.106

Screen Reader: NVDA v. 2024.1

**Barriers**

- User cannot operate the Order Now feature in a meaningful sequence

- User cannot bypass the navigation menu

- User cannot operate the Sign In form

- User cannot operate the Reset Password form

- User cannot operate the Create Account form

- User cannot operate the search menu feature

- User cannot operate the Checkout as Guest form

- User cannot operate the coupon code form during checkout

- User cannot operate the Add Credit Card form

- User cannot operate the Add Gift Card form

**Violation 1: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

When the user tries to navigate the site and close the Order Now popup modal that is displayed, the focus order cannot be navigated in a sequential order to preserve operability. The user is not able to operate or close the Order Now modal.

Applicable WCAG 2.1 Standard at Issue:2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.grandluxcafe.com/

Screen Capture Evidence:

https://drive.google.com/file/d/1-p4AmP8P1TuGURLkWt1QK2oH-XG7MN0K/view?usp=drive_link

**Violation 2: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

When the user tries to navigate to the Order Now modal, the user is allowed to navigate the entire website without closing the modal, therefore the meaningful sequence is not preserved. The user is not able to close the Order Now modal.

Applicable WCAG 2.1 Standard at Issue:1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://www.grandluxcafe.com/

Screen Capture Evidence:

https://drive.google.com/file/d/1-p4AmP8P1TuGURLkWt1QK2oH-XG7MN0K/view?usp=drive_link

**Violation 3: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web pages.

When the user tabs to the main navigation menu, there is not a bypass block mechanism provided to the user. The user is not able to bypass this content.

Applicable WCAG 2.1 Standard at Issue:2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/menu/sunrise-fl

Screen Capture Evidence:

https://drive.google.com/file/d/18l8ynOiK8PCxcNi-WM1kNqU7jOON3OSy/view?usp=drive_link

**Violation 4: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Sign In and does not input a Email, there is no message to identify the error. The user is not able to Sign In.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/login

Screen Capture Evidence:

https://drive.google.com/file/d/1yAHQ3Dx9pQlys_311R4QgHbhT0a4KJfg/view?usp=drive_link

**Violation 5: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Sign In and does not input a Password, there is no message to identify the error. The user is not able to Sign In.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/login

Screen Capture Evidence:

https://drive.google.com/file/d/1yAHQ3Dx9pQlys_311R4QgHbhT0a4KJfg/view?usp=drive_link

**Violation 6: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Reset Password and does not input a Email, there is no message to identify the error. The user is not able to Reset Password.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/login

Screen Capture Evidence:

https://drive.google.com/file/d/1GezlE1PI4J40wYrF5E1OKpcf0CLiZJ6p/view?usp=drive_link

**Violation 7: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Create Account and does not input a First Name, there is no message to identify the error. The user is not able to Create Account.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/login?mode=1

Screen Capture Evidence:

https://drive.google.com/file/d/1n2FfCQli6i4AAw1aAC8DsmzUqEEKIIDQ/view?usp=drive_link

**Violation 8: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Create Account and does not input a Last Name, there is no message to identify the error. The user is not able to Create Account.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/login?mode=1

Screen Capture Evidence:

https://drive.google.com/file/d/1n2FfCQli6i4AAw1aAC8DsmzUqEEKIIDQ/view?usp=drive_link

**Violation 9: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Create Account and does not input a Phone Number, there is no message to identify the error. The user is not able to Create Account.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/login?mode=1

Screen Capture Evidence:

https://drive.google.com/file/d/1n2FfCQli6i4AAw1aAC8DsmzUqEEKIIDQ/view?usp=drive_link

**Violation 10: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Create Account and does not input a Email Address, there is no message to identify the error. The user is not able to Create Account.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/login?mode=1

Screen Capture Evidence:

https://drive.google.com/file/d/1n2FfCQli6i4AAw1aAC8DsmzUqEEKIIDQ/view?usp=drive_link

**Violation 11: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Create Account and does not input a Password, there is no message to identify the error. The user is not able to Create Account.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/login?mode=1

Screen Capture Evidence:

https://drive.google.com/file/d/1n2FfCQli6i4AAw1aAC8DsmzUqEEKIIDQ/view?usp=drive_link

**Violation 12: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Create Account and does not input a I have read and accepted the terms of service, there is no message to identify the error. The user is not able to Create Account.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/login?mode=1

Screen Capture Evidence:

https://drive.google.com/file/d/1n2FfCQli6i4AAw1aAC8DsmzUqEEKIIDQ/view?usp=drive_link

**Violation 13: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Search form and does not input a Search criterion, there is no message to identify the error. The user is not able to Search form.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/menu/sunrise-fl

Screen Capture Evidence:

https://drive.google.com/file/d/121d0w2xESKSzBAFYa6tlNmXEzfiEtp5y/view?usp=drive_link

**Violation 14: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Guest Checkout and does not input a First Name, there is no message to identify the error. The user is not able to Guest Checkout.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/checkout/auth

Screen Capture Evidence:

https://drive.google.com/file/d/1C02o1DytSBnTrhp4hPUTTVzKYwd31xQq/view?usp=drive_link

**Violation 15: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Guest Checkout and does not input a Last Name, there is no message to identify the error. The user is not able to Guest Checkout.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/checkout/auth

Screen Capture Evidence:

https://drive.google.com/file/d/1C02o1DytSBnTrhp4hPUTTVzKYwd31xQq/view?usp=drive_link

**Violation 16: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Guest Checkout and does not input a Email Address, there is no message to identify the error. The user is not able to Guest Checkout.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/checkout/auth

Screen Capture Evidence:

https://drive.google.com/file/d/1C02o1DytSBnTrhp4hPUTTVzKYwd31xQq/view?usp=drive_link

**Violation 17: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Guest Checkout and does not input a Phone Number, there is no message to identify the error. The user is not able to Guest Checkout.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/checkout/auth

Screen Capture Evidence:

https://drive.google.com/file/d/1C02o1DytSBnTrhp4hPUTTVzKYwd31xQq/view?usp=drive_link

**Violation 18: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Checkout and does not input a Coupon Code, there is no message to identify the error. The user is not able to Checkout.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/checkout

Screen Capture Evidence:

https://drive.google.com/file/d/10QkNi9IBDpMK_fgccbbz43bb_qU-1Q4l/view?usp=drive_link

**Violation 19: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Add Credit Card and does not input a Card Number, there is no message to identify the error. The user is not able to Add Credit Card.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/checkout

Screen Capture Evidence:

https://drive.google.com/file/d/1L0NHUlNgLoYSOQny3fGBv3EutXXhnTI8/view?usp=drive_link

**Violation 20: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Add Credit Card and does not input a Exp Date, there is no message to identify the error. The user is not able to Add Credit Card.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/checkout

Screen Capture Evidence:

https://drive.google.com/file/d/1L0NHUlNgLoYSOQny3fGBv3EutXXhnTI8/view?usp=drive_link


**Violation 21: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Add Credit Card and does not input a CVV, there is no message to identify the error. The user is not able to Add Credit Card.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/checkout

Screen Capture Evidence:

https://drive.google.com/file/d/1L0NHUlNgLoYSOQny3fGBv3EutXXhnTI8/view?usp=drive_link

**Violation 22: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Add Credit Card and does not input a Zip Code, there is no message to identify the error. The user is not able to Add Credit Card.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/checkout

Screen Capture Evidence:

https://drive.google.com/file/d/1L0NHUlNgLoYSOQny3fGBv3EutXXhnTI8/view?usp=drive_link

**Violation 23: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to Add Gift Card and does not input a Card Number, there is no message to identify the error. The user is not able to Add Gift Card.

Applicable WCAG 2.1 Standard at Issue:3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://order.grandluxcafe.com/checkout

Screen Capture Evidence:

https://drive.google.com/file/d/15z--
vTzBEWU5_AuWNIuktwewiAGOwMaN/view?usp=drive_link

30)     Although the Website appeared to have an "accessibility" statement displayed and an "accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested, still could not be effectively accessed by, and continued to be a barrier to, blind and visually disabled persons, including Plaintiff as a completely blind person. Plaintiff, although he attempted to access the statement, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and the widget/plugin to enable him to quickly, fully, and effectively navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant, due to his severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and

communicate with Defendant through the Website due to his severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

40)     Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an

information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42) The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43) Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

44) Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45) Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46) The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47) Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48) Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

49)     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

51)     Notice to Defendant is not required because of Defendant's failure to cure the violations.

52)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**COUNT I – VIOLATION OF THE ADA**

54)     Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)     Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)     Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating

the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has

made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)     The Website was subsequently visited by Plaintiff's expert in May and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Ryan Browne, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)     More violations may be present on other pages of the Website, which can and will be
determined and proven through the discovery process in this case.

64)     There are readily available, well-established guidelines on the internet for making Websites
accessible to the blind and visually disabled. These guidelines have been followed by other large
business entities in making their websites accessible. Examples of such guidelines include, but are
not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a
keyboard. Incorporating such basic components to make the Website accessible would neither
fundamentally alter the nature of Defendant's business nor would it result in an undue burden to
Defendant.

65)     Defendant has violated the ADA -- and continue to violate the ADA -- by denying access
to the Website by individuals such as Plaintiff with visual disabilities who require the assistance
of interface with screen reader software to comprehend and access internet websites. These
violations within the Website are ongoing.

66)     The ADA requires that public accommodations and places of public accommodation
ensure that communication is effective.

67)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and
video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2)
specifically states that screen reader software is an effective method of making visually delivered
material available to individuals who are blind or have low vision.

68)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate
auxiliary aids and services where necessary to ensure effective communication with individuals
with disabilities: "In order to be effective, auxiliary aids and services must be provided in

accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

72)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

     i.     Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

ii.     Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.    Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)   WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.      A declaration that Defendant's website is in violation of the ADA;

b.      An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and

effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1]would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

---

[1] 

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.


**COUNT II – TRESPASS**

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)     Defendant's website contains software analytics.  Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)     Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

77)     The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on his computer.

78)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

79)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

80)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

**Cookie Policy**

*Effective Date: January 1, 2020*

34

This cookie policy ("Cookie Policy") explains what cookies are and how Grand Lux Cafe LLC and its parents, subsidiaries, and affiliated entities ("the Company," "we", "us" or "our") use cookies and similar tracking technologies when you visit our website or any other websites, pages, features, mobile applications, or content that we own or operate (collectively, the "Site"). We encourage you to read the full policy so that you can understand what information is collected using cookies and how we use that information.

This Cookie Policy is part of, and is governed by, the terms and conditions set forth in our **Terms of Use**. You should also familiarize yourself with our **Privacy Policy**. By accessing or using our Site, you accept the data practices and terms detailed in our Cookie Policy.

If you do not agree with this Cookie Policy, please discontinue your access or use of the Site immediately. This Cookie Policy does not apply to services offered by other companies or other sites linked to from our Site. If you have questions regarding our Cookie Policy, please contact us as described in the "Contact Us" section below.

We may update this Cookie Policy from time to time and make changes to information previously collected, as permitted by law. If we make material changes, we will post the updated Cookie Policy on this page with a "Last Updated" effective date of the revisions. We encourage you to look for updates and changes to this Cookie Policy by checking this date when you access our Site.

**WHAT ARE COOKIES?**

We may use cookies, embedded scripts, software development kits ("SDKs") and other similar tracking technologies (collectively, "Tracking Technologies") to collect additional personal information automatically as you interact with our Site and to personalize your experience with our Site. We also may use these technologies to collect information about your online activities over time and across third-party websites or other online services.

Cookies are small web files that a site or its provider transfers to your device's hard drive through your web browser that enables the site's or provider's system to recognize your browser and remember certain information. Cookies set by us are called "first party cookies," while cookies set by parties other than the Company are called "third-party cookies." The parties that set third-party cookies can recognize your web browser both when it visits our Site and when it visits certain other websites or mobile applications.

The length of time a cookie will stay on your browsing device depends on whether it is a "persistent" or "session" cookie. Session cookies will only stay on your device until you stop browsing. Persistent cookies stay on your browsing device until they expire or are deleted. We may place cookies from third-party service providers who may use information about your visits to other websites to target advertisements for products and services available from us. We do not control the types of information collected and stored by these third-party cookies. You should check the third party's website for more information on how they use cookies.

**TYPES OF COOKIES ON OUR SITE**

The following types of cookies are used on our Site:

- ***Strictly Necessary Cookies***. These cookies are essential because they enable you to use our Site. For example, strictly necessary cookies allow you to access secure areas on our Site. Without these cookies, some Site cannot be provided. These cookies do not gather information about you for marketing purposes. This category of cookies is essential for our Site to work and they cannot be disabled.

- ***Functional or Preference Cookies***. We use functional cookies to remember your choices so we can tailor our Site to provide you with enhanced features and personalized content. For example, these cookies can be used to remember your name or preferences on our Site. We do not use functional cookies to target you with online marketing. While these cookies can be disabled, this may result in less functionality during your use of our Site.

- ***Performance or Analytic Cookies***. These cookies collect passive information about how you use our Site, including webpages you visit and links you click. We use the information collected by such cookies to improve and optimize our Site. We do not use these cookies to target you with online marketing. You can disable these cookies.

- ***Advertising or Targeting Cookies***. These cookies are used to make advertising messages more relevant to you. They perform functions like preventing the same ad from continuously reappearing, ensuring that ads are properly displayed for advertisers, and in some cases selecting advertisements that are based on your interests. Our third-party advertising partners may use these cookies to build a profile

of your interests and deliver relevant advertising on other sites. You may disable the use of these cookies as set forth below.

We may also use other Tracking Technologies to collect "clickstream" data, such as the domain name of the service providing you with Internet access, your device type, IP address used to connect your computer to the Internet, your browser type and version, operating system and platform, the average time spent on our Site, webpages viewed, content searched for, access times and other relevant statistics, and assign unique identifiers to the device or other credentials you use to access the Site for the same purposes.

Pages of our Site and our emails may contain small electronic files known as web beacons (also referred to as clear gifs, pixel tags and single-pixel gifs) that permit us, for example, to count users who have visited those pages or opened an email and for other related website statistics (for example, recording the popularity of certain website content and verifying system and server integrity). Pages of our Site may also contain social media widgets, which are buttons or icons provided by third-party social media providers that allow you to interact with those social media services when you view a web page or mobile app screen. These social media widgets may collect browsing data, which may be received by the third party that provided the widget, and are controlled by the third parties.

Within our mobile applications, we use third-party software development kits that are embedded in the apps. These app SDKs permit the collection of information about the app itself, activity within the app, and the device the application is running on.

Pages of our Site may also use Java scripts, which are code snippets embedded in various parts of websites and applications that facilitate a variety of operations including accelerating the refresh speed of certain functionality or monitoring usage of various online components; entity tags, which are HTTP code mechanisms that allow portions of websites to be stored or "cached" within your browser to accelerate website performance; and HTML5 local storage, which allows data from websites to be stored or "cached" within your browser to store and retrieve data in HTML5 pages when the website is revisited.

**HOW WE USE COOKIES ON OUR SITE**

We use first-party and third-party cookies for the following purposes:

- To make our Site function properly;

- To improve our Site;

- To make login to our Site easier (such as by remembering your User ID);

- To recognize you when you return to our Site;

- To track your interaction with the Site;

- To enhance your experience with the Site;

- To remember information you have already provided;

- To collect information about your activities over time and across third-party websites or other online services in order to deliver content and advertising tailored to your interests; and

- To provide a secure browsing experience during your use of our Site.

**COOKIES USED ON OUR SITE**

We may use the following cookies on our Site:

- Cookie Name: _ga

  Stored by (with Privacy Policy link):**Google**

  Type: Performance or Analytical

  Expiration: 2 years

  Description: Registers a unique ID that is used to generate statistical data on how the visitor uses the website.

- Cookie Name: _gat

  Stored by (with Privacy Policy link):**Google**

  Type: Performance or Analytical

  Expiration: 1 day

  Description: Used by Google Analytics to throttle request rate.

- Cookie Name: _gid

  Stored by (with Privacy Policy link):**Google**

  Type: Performance or Analytical

  Expiration: 1 day

  Description: Registers a unique ID that is used to generate statistical data on how the visitor uses the website.

- Cookie Name: _fbp

  Stored by (with Privacy Policy link):**Facebook**

Type: Advertising

Expiration: 3 months

Description: Used by Facebook to deliver a series of advertisement products such as real-time bidding from third-party advertisers.

- Cookie Name: fr

  Stored by (with Privacy Policy link):**Facebook**

  Type: Advertising

  Expiration: 3 months

  Description: Used by Facebook to deliver a series of advertisement products such as real-time bidding from third-party advertisers.

- Cookie Name: IDE

  Stored by (with Privacy Policy link):**Google**

  Type: Advertising

  Expiration: 1 year

  Description: Used by Google Doubleclick to register and report the website user's actions after viewing or clicking an advertisement with the purpose of measuring the effectiveness of the ad and to present targeted advertisements.

- Cookie Name: pagead/1p-conversion

  Stored by (with Privacy Policy link):**Google**

  Type: Advertising

  Expiration: Session

  Description: A pixel used by Google to send data to Google Analytics about the visitor's device and behavior.

- Cookie Name: r/collect

  Stored by (with Privacy Policy link): **Google**

  Type: Advertising

  Expiration: Session

  Description: A pixel used by Google to send data to Google Analytics about the visitor's device and behavior.

- Cookie Name: tr

  Stored by (with Privacy Policy link): **Facebook**

  Type: Advertising

  Expiration: Session

  Description: A pixel used by Facebook to deliver a series of advertisement products such as real-time bidding from third-party advertisers.

**YOUR CHOICES**

Your browser may provide you with the option to refuse some or all browser cookies. You may also be able to remove cookies from your browser. You can exercise your preferences in relation to cookies served on our Site by taking the steps outlined below. In addition, most web browsers provide help pages relating to setting cookie preferences. More information may be found for the following browsers here:

- **Google Chrome**
- **Internet Explorer**
- **Mozilla Firefox**

- **Safari (Desktop)**

- **Safari (Mobile)**

- **Android Browser**

- **Opera**

- **Opera Mobile**

*First-Party Cookies*. As noted immediately above, you can use the browser with which you are viewing this Site to enable, disable or delete cookies. To do this, follow the instructions provided by your browser (usually located within the "Help", "Tools" or "Edit" settings). Please note, if you set your browser to disable cookies, you may not be able to access secure areas of the Site. Also, if you disable cookies other parts of the Site may not work properly. You can find more information about how to change your browser cookie settings at **allaboutcookies.org**.

*Third-Party Cookies*. To opt-out of third-party advertising networks and similar entities that use advertising cookies go to **aboutads.info/choices**. Once you click the link you may choose to opt-out of such advertising from all participating advertising companies or only advertising provided by specific advertising entities. For more information about third-party advertising networks and similar entities that use these technologies, please see **aboutads.info/consumers**, or opt-out of interest-based targeting provided by participating ad services through the Digital Advertising Alliance ("DAA") (**optout.aboutads.info**) or the Network Advertising Initiative (**optout.networkadvertising.org**).

*Mobile Applications*. On your iPhone, iPad or Android mobile device, you can change your device settings to control whether you see online interest-based ads, including by

43

setting your device to "limit ad tracking," or you may download the DAA's AppChoices tool (**youradchoices.com/appchoices**) to control interest-based advertising on apps on your mobile device.

*Flash Cookies*. Certain features of our Site may use local stored objects (or Flash cookies) to collect and store information about your preferences and navigation to, from and on our Site. If you do not want Flash Cookies stored on your computer, you can adjust the settings of your Flash player to block Flash Cookies storage. Flash cookies are not managed by the same browser settings as are used for browser cookies, but may be managed here: **macromedia.com/support/documentation**.

Do Not Track

Some Internet browsers, such as Internet Explorer, Firefox, and Safari, include the ability to transmit "Do Not Track" or "DNT" signals. Since uniform standards for "DNT" signals have not been adopted, our Site does not currently process or respond to "DNT" signals.

81)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer.  Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

82)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

## REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434